IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA LORRAINE NELSON,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>KILOLO KIJAKAZI,[1]<br>*Acting Commissioner of Social Security*,<br><br>　　　　Defendant. | )<br>)<br>)<br>)  Civil Action No. 21-234<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER

AND NOW, this 6th day of September 2022, the Court has considered the parties' summary judgment motions and will order judgment in Defendant's favor.  The Administrative Law Judge's ("ALJ") decision denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, and Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*, respectively, is supported by substantial evidence.  Accordingly, it will be affirmed.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).[2]

---

[1]   Kilolo Kijakazi is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).  There is no impact on the case.  42 U.S.C. § 405(g).  The Clerk is directed to amend the docket to reflect the substitution.

[2]   Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly weigh the medical opinion evidence and erred in his evaluation of Plaintiff's subjective complaints in his formulation of her residual functional capacity ("RFC"). For the reasons expressed herein, the Court finds no error in the ALJ's consideration of such evidence and will affirm the underlying decision.  The Court reviews an ALJ's findings of fact for substantial evidence.  *Payton v. Barnhart*, 416 F.Supp.2d 385, 387 (E.D. Pa. 2006) (citations omitted).  Substantial evidence is "such relevant evidence that would be sufficient to support a reasonable conclusion."  *Id.* (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Though the standard is deferential it is not toothless: an ALJ's decision must show that he reviewed all the relevant evidence; therefore, his "findings should be as comprehensive and analytical as feasible . . . so that a reviewing court may know the basis for the decision."  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).  An ALJ must also address that relevant evidence which was

rejected so that reviewing courts can ensure it was not rejected "for no reason or for the wrong reason." *Id.* at 706 (citation omitted).

ALJs use the same five-step sequential evaluation to assess disability for DIB and SSI applications. *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 492 (W.D. Pa. 2005). At step one, the ALJ asks whether the claimant is engaged in "substantial gainful activity." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). At step two, the ALJ asks whether the claimant has a severe, medically determinable, durationally sufficient impairment. *Id.* (citation omitted). At step three, the ALJ compares the claimant's impairment(s) to a list of presumptively disabling impairments listed in the regulations. *Id.* (citation omitted). At step four, the ALJ must find the claimant's RFC and determine whether it permits his or her return to past relevant work. *Id*. (citation omitted). If the claimant cannot return to past relevant work, then the inquiry proceeds to step five where the ALJ must identify other adequately abundant work that the claimant can do with his or her RFC and vocational characteristics. *Id.* (citation omitted). In this matter, the ALJ found Plaintiff's RFC would permit her return to past work, but Plaintiff argues the ALJ erred in his formulation of the RFC. The RFC represents the most the claimant can do despite limitations arising from medically determinable impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). ALJs must consider all relevant evidence arising from both severe and non-severe medically determinable impairments toward the RFC. *Id.*

The first argument Plaintiff has raised to challenge the ALJ's RFC determination is that the ALJ erred in his consideration of the medical opinion evidence in the record. Four opinions and administrative medical findings are relevant to Plaintiff's challenge: two rendered by Plaintiff's rheumatologist, Dr. Larry Moreland; one by consultative examiner Dr. Jadranka Popovic; and findings prepared by Dr. Adnan Saba, a physician with the Office of Disability Determinations. The ALJ afforded "little weight" to the opinions rendered by Drs. Moreland and Popovic (R. 23—24), but afforded Dr. Saba's findings "significant weight." (R. 25). Plaintiff argues that the ALJ should have afforded Dr. Moreland's opinions greater weight because Dr. Moreland treated her. She also argues the ALJ should have given Dr. Popovic's opinion greater weight because—unlike Dr. Saba—Dr. Popovic had the opportunity to examine Plaintiff. Plaintiff further argues that the ALJ failed to consider that Dr. Moreland and Dr. Popovic's opinions were consistent with each other and failed to acknowledge other evidence in the record that was consistent with their restrictive recommendations for Plaintiff's RFC. In the end, Plaintiff argues, the ALJ set aside these opinions and opted to rely on his own lay evaluation of Plaintiff's limitations.

When ALJs consider medical opinion evidence for applications filed before March 27, 2017, they determine weight using six factors: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and, the catch-all, (6) other factors. 20 C.F.R. §§ 404.1527(c)(1)—(6), 416.927(c)(1)—(6). Though ALJs are directed to consider these factors, there is no requirement that an ALJ explicitly address every factor in the decision. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining there is no

"particular language" required for ALJs' analyses); *see also Linderman v. Berryhill*, No. 17-1493, 2018 WL 6589738, at *2 (W.D. Pa. Dec. 14, 2018) ("[A]lthough Section 404.1527(c) identifies a framework for considering treating sources, it does not require an ALJ to specifically address or list each factor set forth therein."). Pursuant to 20 C.F.R. §§ 404.1527, 416.927—*i.e.*, the old rules—ALJs generally afford "more weight to medical opinions from [a claimant's] treating sources" because such sources can "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)" and, thus, "a unique perspective to the medical evidence that [could not] be obtained from the objective medical findings alone or from reports of individual examinations." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). However, ALJs have never been required to afford a treating physician's opinion great weight. *Gamret v. Colvin*, 994 F. Supp. 2d 695, 700 (W.D. Pa. 2014) (explaining ALJs must give a reason for rejecting a treating physician's opinion).

Considering that regulatory framework, the Court finds no error in the ALJ's evaluation of the medical opinion evidence in this matter. The ALJ explicitly considered Dr. Moreland and Dr. Popovic's medical opinions and explained how he determined their appropriate weight by reference to relevant factors. Dr. Moreland had opined in 2016 that Plaintiff would be limited to, among other things, "stand and/or walk for up to two hours in an eight-hour workday; and sit for up to one hour in an eight-hour workday, with unscheduled breaks," *i.e.*, she could not work a full eight-hour day. (R. 23). In 2019, Dr. Moreland opined that Plaintiff could "stand and/or walk for up to one hour in an eight-hour workday; and sit for up to four hours in an eight-hour workday, with unscheduled breaks," again, limiting Plaintiff to less than a full day's work. (*Id.*). The ALJ explained that he would afford these opinions little weight mainly because the limitations Dr. Moreland recommended were "largely inconsistent with the relevant medical evidence of record, including reports of largely unremarkable physical examinations." (*Id.*). The ALJ acknowledged that Plaintiff's records showed medically determinable impairments resulting in "chronic pain," but further found those same records indicated that Plaintiff had no "clinical deficits." (*Id.*). Accordingly, Dr. Moreland's opinion that Plaintiff could not work a full eight-hour day was undermined. (*Id.*). The Court is satisfied by this explanation for the ALJ's weight determination for Dr. Moreland's opinions despite the treating relationship.

The ALJ also adequately explained the basis of his "little weight" determination for Dr. Popovic's opinion. (R. 24). Dr. Popovic had opined, *inter alia*, that Plaintiff could daily "stand and/or walk for about two hours . . . and sit for about four hours." (R. 24). The ALJ explained that these functional limitations she recommended were "inconsistent with . . . largely unremarkable physical examinations . . . and diagnostic imaging showing only mild degenerative changes / plantar fasciitis of the right foot." (R. 24). The ALJ further explained that Dr. Popovic's findings were inconsistent with her own examination of Plaintiff showing a "normal gait," "full squat," and "no difficulty getting on/off the exam table and resing [sic] from a chair." (*Id.*). That exam also revealed that despite soreness and tenderness, Plaintiff had full strength. (*Id.*). Plaintiff contends that Dr. Popovic's opinion was consistent with, among other evidence, Dr. Moreland's opinions and Plaintiff's physical therapy records. However, the ALJ adequately

supported his weight determination and did not overlook evidence that might have supported an alternative weight determination. The mere presence of evidence in the record that could have been found to support a finding of greater weight for Dr. Popovic's opinion does not undermine the ALJ's well-supported finding. *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009). Thus, the Court finds no error in the ALJ's consideration of Dr. Popovic's opinion, and the Court further finds that Plaintiff's allegation that the ALJ turned from these expert opinions only to rely on his own lay evaluation of the evidence is unfounded. The ALJ's RFC finding was supported by Dr. Saba's finding that Plaintiff could perform a "wide range of light work." (R. 24). The ALJ adequately explained that he would afford Dr. Saba's findings "significant weight" based largely on the consistency factor. (R. 24—25). Of course, even if Dr. Saba's findings were not in evidence, the ALJ would not have needed a physician to prescribe a light-work RFC before finding Plaintiff to be capable of the same. *Doty v. Colvin*, No. CIV.A. 13-80-J, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014).

The second argument Plaintiff has raised to challenge the RFC is that the ALJ erred in rejecting her subjective representation of her symptoms and limitations. Plaintiff argues that it was incorrect for the ALJ to reject her professed symptoms/limitations because they conflicted with evidence of her daily activities and because they were uncorroborated by objective medical evidence. An ALJ who assesses a claimant's alleged symptoms must first ask "whether the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms [s/]he alleges." *Protzman v. Colvin*, No. CV 17-108, 2018 WL 1519071, at *1 n.1 (W.D. Pa. Mar. 28, 2018) (citing 20 C.F.R. §§ 404.1529(b), 416.929(b)). If the alleged symptom(s) are grounded in a medically determinable impairment, the ALJ will then "evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit [the claimant's] ability to work." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)). An ALJ "will consider all of the available evidence" in his or her evaluation of the "intensity and persistence of [the claimant's] symptoms." 20 C.F.R. §§ 404.1529(a), 416.929(a).

The Court is unpersuaded that the ALJ erred in his assessment of Plaintiff's alleged symptoms and limitations. The ALJ found that the objective evidence showed Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms." (R. 21). Having cleared that step-one hurdle, the ALJ evaluated "the intensity, persistence and limiting effects" of her symptoms. (*Id.*). Here, the ALJ found Plaintiff's symptoms and limitations were not as severe as she alleged based on "some inconsistencies between the claimant's allegations and her self-reported daily activities." (*Id.*). For instance, though Plaintiff had alleged that "she is limited in her ability to work at any exertional level"— *e.g.*, "report[ing] that she could barely walk," "that she could not sit for more than twenty minutes," and that she "could not stand to do the dishes" (R. 20—21)—the ALJ observed that she reported being able to perform daily tasks like "preparing meals, laundering and ironing clothes, and grocery shopping." (*Id.*). In addition to this inconsistency, the ALJ explained that Plaintiff's allegations were not supported by objective medical evidence which included "reports

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 17) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 19) is GRANTED as specified above.

s/ Alan N. Bloch<br>United States District Judge

ecf:   Counsel of Record

---

of largely unremarkable physical examinations." (*Id.*). The Court finds no error in this evaluation of Plaintiff's allegations. Plaintiff has argued that her daily activities should only have been relevant to the extent they demonstrated she could work full time or to the extent that she contradicted herself. (Doc. No. 18, pgs. 14—15 (citing *Gonzales v. Colvin*, 191 F. Supp. 3d 401, 423 (M.D. Pa. 2015)). Self-contradiction is precisely what the ALJ found when he compared Plaintiff's self-reported daily activities such as preparing meals, doing laundry, and shopping to her professed inability to sustain work at any exertional level. (R. 20—21). And Plaintiff's argument that the ALJ erred because he should have found that her daily activities did not "*meaningfully* contradict testimony" (Doc. No. 18, pgs. 15—16) (emphasis added) asks the Court to consider for itself whether inconsistencies in the record are material such that they detract from Plaintiff's representation of her symptoms and limitations. The substantial evidence standard does not permit such a reweighing of the evidence.

Additionally, the Court finds no fault in the ALJ's secondary explanation for his evaluation of Plaintiff's allegations, that is, that the objective evidence did not support them. The ALJ did not reject Plaintiff's allegations solely because medical records did not corroborate her symptoms; rather, he allowed the objective evidence to inform his evaluation of the intensity and persistence of her symptoms alongside the inconsistencies among her stated symptoms and daily activities. (R. 20—21). Though ALJs will not reject a claimant's alleged pain or other symptoms solely based on the absence of objective evidence to "substantiate" those claims, objective medical evidence is unarguably relevant to an ALJ's evaluation of a claimant's symptoms and their limiting effect(s). 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). Thus, the ALJ did not err. For this and the foregoing reasons, the Court will affirm the ALJ's final decision denying Plaintiff's applications for benefits under the Act.